IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANGELA MORTELLARO, RANDY          §
PEATROSS, C. MICHAEL WHITE,        §
HARVEY J. HOUSE, JR., KATHRYN      §
C. HEADRICK, CASEY S. DILL,        §
CLIFF ASHER, AND CHERYL A.         §
CAMPBELL, et al.,                  §
                                   §
        Plaintiffs,                §
                                   §
vs.                                §    Civil Action No. H-03-3159
                                   §
TRANSWESTERN PUBLISHING            §
COMPANY, L.L.C.,                   §
                                   §
        Defendant.                 §

## MEMORANDUM OPINION

Pending before the court[1] is Defendant Transwestern Publishing
Company, L.L.C.'s Motion for Summary Judgment (Docket Entry No.
12), and the responses filed thereto.  The motion is **DENIED**.

### I.  Case Background

Plaintiffs are former employees of Defendant Transwestern
Publishing Company, L.L.C. (Transwestern), employed to sell ads
and/or listings in business telephone directories compiled and
distributed in specific geographical areas.[2]  Plaintiffs allege
that Transwestern failed to pay them overtime during their

---

[1]

On January 17, 2005, the parties consented to proceed before the
undersigned pursuant to 28 U.S.C. § 636(c).

[2]

For example, the company produced business telephone directories for the
Clear Lake, Pasadena, Alvin/Friendswood Pearland and Galveston/Texas City areas.
See Plaintiffs' Supplemental Response to Defendant's Motion for Summary Judgment,
Docket Entry No. 17, Ex. C, Deposition of Thomas Douglas, ("Douglas Dep.") at pp.
20-21.

respective terms of employment.  Defendant admits that Plaintiffs were required to work in excess of forty hours per week but argues that, as a matter of law, it properly classified Plaintiffs as "outside salesmen" who were exempt from the overtime provisions of the Fair Labor Standards Act.  For the most part,[3] Plaintiffs were paid a base salary, sales commissions, and a travel allowance.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, 337 F.3d 539, 540-41 (5th Cir. 2003).  The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).

If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a

---

[3]

Thomas Douglas testified that he worked on a straight commission basis. Douglas Dep. at pp. 15-16.

2

showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence which establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist which must be resolved at trial. Id. at 324.

The nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

### III.   Analysis

The Fair Labor Standards Act ("FLSA") generally requires employers to pay their employees at least one and one-half times their regular wage rate for hours worked in excess of forty hours per week. See 29 U.S.C. § 207(a). The FLSA specifically provides exemptions which exclude certain employees from the FLSA's overtime provision. In particular, "Any employee employed . . . in the capacity of outside salesman (as such term [] [is] defined and delimited from time to time by regulations of the Secretary [of Labor] . . .)" is exempted from the FLSA's overtime provisions. 29 U.S.C. § 213(a)(1).

The Secretary of Labor, exercising this delegated authority,

has promulgated regulations to define the "outside salesman"
exemption.  29 C.F.R. § 541.500 provides that the term "outside
salesman" shall mean any employee

> (a) Who is employed for the purpose of and who is
> customarily and regularly engaged away from his
> employer's place or places of business in:
>
> > (1) Making sales within the meaning of section
> > 3(k) of the Act, or
> >
> > (2) Obtaining orders or contracts for services
> > or for the use of facilities for which a
> > consideration will be paid by the client or
> > customer; and
>
> (b) Whose hours of work of a nature other than that
> described in paragraph (a)(1) or (2) of this section do
> not exceed 20 percent of the hours worked in the workweek
> by nonexempt employees of the employer: Provided, That
> work performed incidental to and in conjunction with the
> employee's own outside sales or solicitations, including
> incidental deliveries and collections, shall not be
> regarded as nonexempt work.

Application of an exemption under the FLSA is an affirmative
defense on which the employer has the burden of proof.  Corning
Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974).  The exemption
is to be narrowly construed against the employer seeking to assert
it.  Dalheim v. KDFW-TV, 918 F.2d 1220, 1224 (5th Cir. 1990).

Against this framework, the court considers whether Defendant
has met its burden of proving, as a matter of undisputed material
facts, that Plaintiffs are outside salesmen as defined by the
regulations.

The parties do not dispute that Plaintiffs are salesmen,
however, the exemption only covers a salesman "who is customarily

and regularly engaged away from his employer's place or places of business." 29 C.F.R. § 541.500(a). In support of its contention that Plaintiffs are "outside salesmen," as opposed to nonexempt "inside salesmen," Defendant proffers the affidavit of Amber Carroll, who worked as a sales representative, area sales manager, and district sales manager for Defendant during the times relevant to this present dispute.[4]

Carroll averred that Transwestern required Plaintiffs to report to the office every day at 8:00 a.m. and return generally at 5:00 p.m. to report on the day's activities, perform paperwork on sales made, and to prepare for the next day by scheduling appointments and preparing presentation materials. Carroll further stated that Plaintiffs were required to leave the office every day by 9:00 a.m. and could not return before 4:00 p.m. She also stated that on occasion, Plaintiff were required to stay in the office until approximately 6:00 or 6:30 p.m. to make telephone contact with prospective customers and set up sales appointments.

Plaintiffs dispute Carroll's averment that they were required to leave the office by 9:00 a.m. and not return before 4:00 p.m.

Plaintiff Angela Mortellaro testified that she had to report for work at 8:00 a.m.[5] Some days there would be a meeting at 8:00

---

[4]
See Defendant Transwestern Publishing Company, L.L.C.'s Motion for Summary Judgment, Docket Entry No. 12, Ex. A, Affidavit of Amber Carroll.

[5]
See Plaintiffs' Supplemental Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. B. Deposition of Angela Mortellaro

a.m.[6]  She was then required to spend an hour to an hour and a half on the phone setting up a minimum of fifteen appointments.[7]  She generally returned to the office around 3:00 to 3:30 p.m. to take care of paperwork.[8]  There would be a short sales meeting at the end of the day.[9]  Depending on the day of the week, the sales representatives were required to stay after 5:00 p.m. for "call parties."[10]  At the call parties, the sales representatives were given competitors' phone books or lists of prospective clients and required to call the businesses to attempt to sell new listings and ads in the Transwestern directory.[11]  The call parties lasted, on average, from 5:00 to 6:30 p.m.[12]  Mortellaro participated in call parties on Saturdays on an infrequent basis.[13]

Plaintiff   Thomas   Douglas   began   his   employment   with

_____

("Mortellaro Dep.") at p. 8.

[6]  Id.

[7]  Mortellaro Dep. at pp. 8-9, 14.

[8]  Mortellaro Dep. at p. 9.

[9]  Mortellaro Dep. at p. 10.

[10]  Mortellaro Dep. at pp. 11-12.

[11]  Mortellaro Dep. at p. 13.

[12]  Mortellaro Dep. at p. 15.

[13]  Mortellaro Dep. at p. 17.

Transwestern in its Fort Worth office.[14]  There, he went into the office very rarely, and kept in contact with his manager by fax and telephone.[15]   He testified that his job duties changed "dramatically" when he relocated to Houston as his job duties there also required him to engage in telemarketing.[16]  He testified that if a sales representative did not have an established number of confirmed appointments each day, he would be required to stay in the office to do telephone solicitations until the required number of appointments was achieved, even if that meant canceling or rescheduling existing appointments.[17]

Douglas also testified that sales representatives were not permitted to perform any prep work in the office during the course of the day, even if there was a break between appointments.[18]  It was expected that salesmen would either be in the office on the phone soliciting new customers or out in the field; layouts and other prep work was to be done before they arrived at the office.[19] He was due back in the office by either 4:00 or 5:00 p.m.

---

[14]
Douglas Dep. at p. 7.

[15]
Douglas Dep. at pp. 8-10.

[16]
Douglas Dep. at pp. 15, 25.

[17]
Douglas Dep. at pp. 17-18.

[18]
Douglas Dep. at p. 19.

[19]
Id.

Douglas also was required to attend call parties, which became more frequent toward the end of a campaign on a particular directory.[20]   The call parties were to secure new customers. Douglas testified that when he worked in Fort Worth, he spent approximately one hour per week making telephone solicitations to new customers.[21]   In Houston, the call parties lasted as late as 6:30 p.m., and attendance was required.[22]

Plaintiff Theresa McCunn testified that she was required to be in the office by 8:00 a.m.[23]  Sales representatives were required to stay in the office each day until they scheduled fifteen appointments, or until 5:00 p.m.[24]  On Mondays, there would be a sales meeting, which lasted at least an hour, followed by individual meetings with a supervisor.[25]

Plaintiff Deborah Tunnicliff stated that the sales representatives were required to attend 8:00 a.m. meetings every day and that the meetings lasted from as short as fifteen minutes

---

[20]
Douglas Dep. at pp. 20-21.

[21]
Douglas Dep. at p. 25.

[22]
Douglas Dep. at p. 27.

[23]
See Plaintiffs' Supplemental Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. D, Deposition of Theresa McCunn ("McCunn Dep.") at p. 7.

[24]
McCunn Dep. at pp. 22, 24.

[25]
McCunn Dep. at pp. 22-24.

8

to two hours in length.  She was required to attend call parties at the end of the day, which lasted from 5:00 p.m. to 6:30 p.m.[26]  The frequency of the call parties varied; at the beginning of a campaign, they would be infrequent, increasing to every day for two or three months by the end of a campaign.[27]  Tunnicliff was required to participate in call parties on Saturdays in order to reach goals set by management.[28]  She testified that she also was required to participate in Chamber of Commerce events after hours where she handed out business cards and sold parking tickets.[29]  Finally, Tunnicliff declined a promotion because it would result in increased sales goals but she was promoted and her goals were increased in spite of her request that they not be.[30]

Plaintiff Randy Peatross was employed for Defendant for four years.  He was required to be at the office every day by 8:00 a.m.[31] and was not permitted to leave until he had scheduled three

---

[26] See Plaintiffs' Supplemental Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. E, Deposition of Deborah Tunnicliff ("Tunnicliff Dep.") at p. 13.

[27] Tunnicliff Dep. at p. 14.

[28] Tunnicliff Dep. at pp. 15, 22.

[29] Tunnicliff Dep. at p. 16.

[30] Tunnicliff Dep. at p. 24.

[31] See Plaintiffs' Supplemental Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. F, Deposition of Randy Peatross ("Peatross Dep.") at p. 9.

9

appointments.[32]   There were meetings twice a day, at 8:00 a.m. and at 5:00 p.m.[33] The morning group meetings lasted from 8:00 a.m. to approximately 10:00 a.m., the afternoon meeting lasted approximately ten to thirty minutes.[34] Individual meetings with the supervisor were about twice a week.[35] Peatross testified that many of these meetings did not relate to their direct sales, but were designed to improve paperwork issues.[36]

Peatross also was required to attend call parties, approximately three times per week, in order to secure new business.[37] Peatross estimated that he attended mandatory Saturday call parties approximately thirty-six times per year and they were four to five hours in length.[38]

Peatross testified that he was expected to attend community functions to hand out balloons and to make people generally aware

---

[32] Peatross Dep. at p. 35.

[33] Peatross Dep. at p. 28.

[34] Peatross Dep. at pp. 18, 29.

[35] Peatross Dep. at p. 20.

[36] Peatross Dep. at p. 14.

[37] Peatross Dep. at pp. 16, 21.

[38] Peatross Dep. at p. 22.

of the company.[39]  He was required to do office filing, copying, and set appointments for new hires for five straight weeks to help the secretarial staff.[40]

Plaintiff Harvey House testified that his day started at 8:00 a.m. with a meeting which lasted from an hour and a half to two hours, followed by required telephone solicitation from a cold call list provided by Defendant.[41]  The day would end with a required meeting at 5:00 p.m.[42]  Sales representatives were required to have a set number of appointments per day.[43]  He prepared proposed layouts for prospective clients at night.[44]  If the sales group as a whole was not meeting the directory's revenue goal, the salesmen would all, as a group, be required to attend additional meetings.[45]

House was also required to attend call parties, where a list of leads purchased by Defendant was divided up among the sale representatives and they would be required to make telephone

---

[39] Peatross Dep. at p. 31.

[40] Peatross Dep. at pp. 33-34.

[41] See Plaintiffs' Supplemental Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. G, Deposition of Harvey J. House ("House Dep.") at pp. 9-11, 14.

[42] House Dep. at pp. 17, 24.

[43] House Dep. at p. 11.

[44] House Dep. at p. 19.

[45] House Dep. at p. 12.

solicitations to those businesses.[46]   Sometimes the call parties
would start at 7:00 a.m., and others were in the afternoon at 5:00
p.m.  House estimated that he averaged three call parties in the
morning and a similar number in the afternoon per week.[47]   They
would last approximately an hour and a half.[48]   House was also
required to attend trade shows, where he passed out balloons and
banners, on an average of five to seven times per year.[49]

Plaintiff Cheryl Campbell was required to report to the office
at 8:00 a.m., every day, for meetings.[50]   The daily group meeting
would last forty-five minutes to an hour, her individual Monday
meeting with her supervisor, for thirty to forty-five minutes.[51]
On the other days, her morning meeting with her supervisor would
last ten to fifteen minutes.[52]   The typical meeting topic was the

---

[46]
House Dep. at p. 21.

[47]
House Dep. at p. 23.

[48]
Id.

[49]
House Dep. at p. 25.

[50]
See Plaintiffs' Supplemental Response to Defendant's Motion for Summary
Judgment, Docket Entry No. 17, Ex. H, Deposition of Cheryl Campbell ("Campbell
Dep.") at pp. 10-12.

[51]
Id.

[52]
Campbell Dep. at p. 11.

status of the company's sales goal.[53]   Campbell was required to be
back in the office by 5:00 p.m. to attend call parties, which would
last approximately two hours, three days per week.[54]   She was also
required to work on weekends, approximately one Saturday per month
for four hours, making cold calls to prospective customers.[55]   Like
the other plaintiffs, Campbell was required to attend Chamber of
Commerce or trade shows to hand out directories and generally
promote Defendant's business.[56]

    Plaintiff   Charles   White   was   employed   by   Defendant   for
approximately one year.[57]   White was required to be in the office
by 8:00 a.m. but on occasion, Defendant required him to arrive at
7:00 a.m.[58]   White testified that Defendant would provide its sales
representatives with the names of the customers who had bought ads
the previous year and those customers would be contacted in order
to renew their ad in the new directory.[59]   In connection with that

---

[53]
Campbell Dep. at pp. 12-13.

[54]
Campbell Dep. at p. 14.

[55]
Campbell Dep. at p. 15.

[56]
Campbell Dep. at pp. 16-17.

[57]
See Plaintiffs' Supplemental Response to Defendant's Motion for Summary
Judgment, Docket Entry No. 17, Ex. I, Deposition of Charles White ("White Dep.")
at p. 6.

[58]
White Dep. at p. 27.

[59]
White Dep. at p. 7.

solicitation, White would cold-contact nearby companies for new business.  If an individual salesman did not meet his revenue goal, he was required to stay in the office until he had twenty solid appointments set up.[60]  If any salesman did not have twenty solid appointments for the week, Defendant would not allow that salesman out of the office to attend the appointments he had scheduled.[61]

Defendant required White to participate in call parties for one and one-half to two hours, three times per week.[62]  White testified that on one occasion even though he was three hundred percent over quota, he still was required to participate in the after-hours call parties.[63]  He also testified that his supervisor would page him in the field and require him to return to the office to make telephone calls if there were not enough sales that week.[64]

By the end of the campaign, Defendant required attendance at call parties every day, including Saturday.[65]  White was also required to attend trade shows to promote the company.[66]

---

[60]
White Dep. at p. 9

[61]
Id.

[62]
White Dep. at pp. 11, 13.

[63]
White Dep. at p. 12.

[64]
Id.

[65]
White Dep. at p. 13.

[66]
White Dep. at p. 18.

Plaintiff Casey Dill testified that he was required to arrive at the office by 8:00 a.m. and was not permitted to leave until his appointment schedule was full for the week.[67]  He was required to return to the office by 5:00 p.m. and make cold calls until 6:30 to 7:00 p.m. on Tuesdays, Wednesdays and Thursdays.[68]  On Friday nights there would be a meeting at 5:00 p.m.[69]  Dill worked every other Saturday, making cold calls for four to six hours.[70]  He was also required to attend trade shows.[71]

Plaintiff Jan Boyles testified that she worked for the Defendant approximately two years.[72]  Boyles stated that she was required to have fifteen appointments per day.[73]  She usually arrived at the office by 7:45 a.m., but on occasion arrived at work at 7:00 a.m. to help management to do paperwork and other

---

[67]
See Plaintiffs' Supplemental Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. J, Deposition of Casey S. Dill ("Dill Dep.") at pp. 10-11.

[68]
Dill Dep. at pp. 11-13.

[69]
Dill Dep. at pp. 13-14.

[70]
Dill Dep. at pp. 14-15.

[71]
Dill Dep. at p. 16.

[72]
See Plaintiffs' Supplemental Response to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. K, Deposition of Jan Boyles ("Boyle Dep.") at p. 6.

[73]
Boyles Dep. at pp. 10-11.

miscellaneous tasks.[74]  Boyles stated that the Monday group meeting typically lasted until noon.[75]

Boyles also testified that there were other required meetings during the week, which she referred to as "field meetings." Typically those meetings were held outside the office at a restaurant and would last from 8:00 a.m. to 9:30 or 10:00 a.m.[76] Other times there would be a broadcast for all salemen to be back in the office by a specific time in the afternoon .[77]

Boyles was also required to attend calling parties three times per week and sometimes daily or Saturdays when a directory was in "closing mode."  Those sessions lasted until 7:00 to 7:30 p.m. Boyles stated that managers required salesmen to stay into the evening until their sales objectives were met.[78]

Plaintiff Loren Hart testified that he worked in Defendant's Houston office for eight weeks and at the Dallas office for over

---

[74] Boyles Dep. at p. 13.

[75] Boyles Dep. at p. 15.

[76] Boyles Dep. at p. 20.

[77] Boyles Dep. at p. 23.

[78] Boyles Dep. at p. 21.

twelve months.[79]   He was paid exclusively by commission.[80]
Initially, there were required meetings on Mondays, which would
last one hour.[81]   Later in his employment, the number of meetings
increased to every day.[82]   However, unlike the Houston plaintiffs,
Hart was not required to drive into the Fort Worth office unless an
executive from the San Diego office was in town.[83]   During his last
four months of employment, he was required to appear in person at
the Fort Worth office.[84]   He was required to attend calling parties
in the Fort Worth office once to twice a week and those sessions
would last an hour.[85]

    In light of the foregoing testimony, the court finds that
Plaintiffs have raised a genuine issue of material fact concerning
whether they were "customarily and regularly" engaged away from
their employer's place of business as required by 29 C.F.R. §
541.500(a).   A jury must decide this issue.   If a jury finds that

---

[79]

    See Plaintiffs' Supplemental Response to Defendant's Motion for Summary
Judgment, Docket Entry No. 17, Ex. L, Deposition of Loren Hart ("Hart Dep.") at
pp. 6-7.

[80]

Hart Dep. at pp. 7-8.

[81]

Hart Dep. at p. 12.

[82]

Hart Dep. at p. 13.

[83]

Hart Dep. at p. 16.

[84]

Hart Dep. at p. 16.

[85]

Hart Dep. at p. 17.

17

Plaintiffs were customarily and regularly engaged away from their employer's place of business, it must also resolve the disputed fact issue whether the Plaintiffs' non-sales activities exceeded twenty percent of the hours worked in the workweek by nonexempt employees of the employer as required by 29 C.F.R. § 541.500(b).

In light of the foregoing, Defendant Transwestern Publishing Company, L.L.C.'s Motion for Summary Judgment is **DENIED.**

SIGNED this 17th day of May, 2005, in Houston, Texas.

Nancy K. Johnson
United States Magistrate Judge