IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELA MORTELLARO, RANDY PEATROSS, C. MICHAEL WHITE, HARVEY J. HOUSE, JR., KATHRYN C. HEADRICK, CASEY S. DILL, CLIFF ASHER, AND CHERYL A. CAMPBELL, et al., | § § § § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. H-03-3159 |
| TRANSWESTERN PUBLISHING COMPANY, L.L.C., | § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION

The court has heard the evidence presented and makes the following findings pursuant to Fed. R. Civ. P. 52.

Plaintiffs are former employees of Defendant Transwestern Publishing Company, L.L.C. (Transwestern), employed to sell advertisements and/or listings in business telephone directories compiled and distributed in specific geographical areas.

Plaintiffs allege that Transwestern failed to pay them overtime during their respective terms of employment. Defendant admits that Plaintiffs were required to work in excess of forty hours per week but argues that, as a matter of law, it properly classified Plaintiffs as "outside salesmen" who were exempt from the overtime provisions of the Fair Labor Standards Act. For the most part, Plaintiffs were paid a base salary and sales commissions, and also provided a travel allowance. The particulars

follow.

Plaintiff Randy Peatross testified that he was employed as an account executive from October 1998 to November 2002. He estimated that he routinely was required to work at least 65 hours per week and was never paid overtime. Peatross stated that he was required to be at the Transwestern office by 8:00 a.m. for a mandatory group sales meeting Monday through Friday. On Mondays, the meeting typically lasted two hours. After the group meeting, Peatross met individually with his sales manager who reviewed his weekly sales forecast. No salesman could leave the office until he had fifteen appointments scheduled for the week. This might require a salesman to be at his desk making phone calls for most of Monday. Sales were made face-to-face at the customer's office.

Peatross was required to call his manager after every appointment to either report a sale or to obtain further instructions if no sale resulted. Sales were broadcast via pager to all other salesmen in the field as a motivational tool. Peatross returned to the office between 4:00 and 5:00 p.m., at which time he was expected to turn in his paperwork and post his sales on the board. At 5:00 p.m., there was a short sales meeting to review the sales of the day. In the evenings, at home, he would prepare ad layouts for his sales presentations the next day. Until its merger, Defendant had no graphics department and salesmen had to do their own ad layouts.

On at least three days per week, usually Tuesday, Wednesday,

and Thursday, Peatross would be required to work from 5:00 p.m. to 6:30 p.m. making phone calls to secure face-to-face meetings with potential new customers. These sessions were known as "call parties." Peatross testified that the supervisors put intense pressure on salesmen to cold call potential customers until a certain goal was met. As a result of calling after 5:00 p.m. when many businesses were closed, it was difficult to set up appointments, increasing the pressure and frustration levels of all involved.

Peatross also was required to attend Saturday call parties, which lasted four to five hours each. Peatross testified that attendance at the call parties was mandatory even if a salesman had reached his own individual sales goal; the call parties and resulting appointments were required to make the Transwestern sales goal.

Peatross was required to attend approximately six "Chamber of Commerce-type"[1] events and trade shows per year in order to promote the Defendant's business. He never made any appointments or sales at those events.

At the beginning of a sales canvass for a particular area, a sales manager would hand out "revenue accounts" to account executives. Those revenue accounts were the names of customers who had purchased advertisements the year before. Peatross was

---

[1] The court adopts the Plaintiffs' characterizations of these events.

required to collect any delinquent amounts from those customers in order to sell a new ad. Peatross estimated that approximately forty percent of his assigned revenue accounts were delinquent.

The other plaintiffs testified to similar facts.

The Fair Labor Standards Act ("FLSA") generally requires employers to pay their employees at least one and one-half times their regular wage rate for hours worked in excess of forty hours per week. See 29 U.S.C. § 207(a). The FLSA specifically provides exemptions which exclude certain employees from the FLSA's overtime provision. In particular, "[A]ny employee employed . . . in the capacity of outside salesman (as such term[] [is] defined and delimited from time to time by regulations of the Secretary [of Labor] . . .)" is exempted from the FLSA's overtime provisions. 29 U.S.C. § 213(a)(1).

The Secretary of Labor, exercising this delegated authority, has promulgated regulations defining the "outside salesman" exemption. 29 C.F.R. § 541.500 states that the term "outside salesman" shall mean any employee

> (a) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:
>
>> (1) Making sales within the meaning of section 3(k) of the Act, or
>>
>> (2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
>
> (b) Whose hours of work of a nature other than that

> described in paragraph (a)(1) or (2) of this section do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer: Provided, That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as nonexempt work.

29 C.F.R. §541.500.[2]

Application of an exemption under the FLSA is an affirmative defense on which the employer has the burden of proof. Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974). The exemption is to be narrowly construed against the employer seeking to assert it. Dalheim v. KDFW-TV, 918 F.2d 1220, 1224 (5th Cir. 1990).

The parties do not dispute that Plaintiffs are salesmen, however, the exemption only covers a salesman "who is customarily and regularly engaged away from his employer's place or places of business." See 29 C.F.R. § 541.500(a). The regulation defines "away from his employer's place of business," in contrast to "inside salesmen," who are not exempt from the FLSA. The regulation states, "Characteristically, the outside salesman is one who makes his sales at his customer's place of business." 29 C.F.R. § 541.502(b).[3]

The court finds that a substantial majority of Plaintiffs'

---

[2] This version of the regulation was in effect during the applicable years of Plaintiffs' employment. The regulation was amended, effective August 24, 2004.

[3] This version of the regulation was in effect during the applicable years of Plaintiffs' employment. The regulation was amended, effective August 24, 2004.

5

time was spent working to sell ads to customers and that the sales were completed face-to-face at the customer's office. Plaintiffs generally agreed that on weekdays other than Mondays, they were generally out of the office by 9:00 a.m., and returned between 4:00 p.m. and 5:00 p.m. These facts satisfy the requirement that they be regularly engaged away from the employer's place of business, establishing the first part of the outside salesman exemption, 29 C.F.R. § 541.5(a)(2).

The dispute in this case centers around the second part of the "outside salesman" exemption. Plaintiffs argue that their essential duties also included call parties, collections work, and "Chamber of Commerce"/trade show events. Defendant alleges that these duties are "incidental to and in conjunction" with their individual sales efforts. See 29 C.F.R. § 541.5. If so, then it does not matter if the hours expended on these duties, combined with the sales work which occurred between 8:00 a.m. and 5:00 p.m. exceeded forty hours per week. If these duties are not considered "incidental to and in conjunction with" a salesman's individual sales efforts, then the regulation limits that nonexempt work to no more than twenty percent of a nonexempt employee's hours, which in this case would equal eight hours.

The regulation defines "incidental to and in conjunction with sales work" as follows:

> Work performed "incidental to and in conjunction with the employee's own outside sales or solicitation" includes not only incidental deliveries and collection which are

>     specifically mention in § 541.5(b), but also any other
>     work performed by the employee in furthering his own
>     sales efforts.  Work performed incidental to and in
>     conjunction with the employee's own outside sales or
>     solicitations would include, among other things, the
>     writing of his sales reports, the revision of this own
>     catalog, the planning of his itinerary and attendance at
>     sales conferences.

29 C.R.F. § 541.503.[4]

Turning first to the call parties, the court finds that making sales appointments is a fundamental part of an outside salesman's job duties.  Substantively, there is nothing to distinguish the telephone calls made by Plaintiffs during business hours soliciting sales appointments from the calls soliciting appointments made during call parties, other than the time of day and the abusive atmosphere deliberately generated by the Plaintiffs' supervisors.  In both cases, each salesman is making his own appointments and earns a commission if a sale is completed.

In light of the court's finding that the nature of the work performed at the call parties was no different from the work performed during business hours, the court concludes that the call parties were "incidental to and in conjunction with" a salesman's own sales efforts, in spite of the mandatory attendance and abusive atmosphere of the call parties.  Given the present state of the law and regulations, an employer can require an outside salesman to

---

[4] This version of the regulation was in effect during the applicable years of Plaintiffs' employment.  The regulation was amended, effective August 24, 2004.

work hours far in excess of forty per week as long as the work is incidental to and in conjunction with his sales work.

The court comes to the same conclusion with respect to collections work on accounts for which the salesman generated a commission. The regulations are very clear on this point. 29 C.F.R. § 541.500 expressly provides, "[W]ork performed incidental to and in conjunction with the employee's own outside sales or solicitations, *including incidental deliveries and collections,* shall not be regarded as nonexempt work." 29 C.F.R. § 541.500(b)(emphasis added). However, collections work on accounts for which the salesman did not earn a commission is not exempt work simply because the employer considers that collections activity as a prerequisite to a sale. In the former case, the salesman has earned a commission for his sales efforts and the collections activity assures his continued receipt of the commission.[5] In the latter case, the collections activity precedes any sales activity, and the salesman does not earn a commission or any benefit from the collection of the delinquent account unless he also makes a sale after bringing the account current. The collections activity in the latter case is incidental to a sale made by another salesman and is not incidental to a sale made by the collecting salesman. The court concludes that the employer may not turn its outside

---

[5] If the account goes delinquent, the salesman is penalized and loses a part or all of his commission.

salesmen into an unpaid collections department by imposing collections duties on accounts for which that salesman did not earn a commission.

Because there is no evidence to support a finding that collections work on accounts for which a plaintiff did not earn a commission exceeded eight per week, the court concludes that the nonexempt collections work did not exceed the twenty percent threshold required for a finding of nonexempt outside sales work.

Finally, whether the requirement to attend trade shows and "Chamber of Commerce type" events is exempt depends on the type of activity performed by the salesman. The regulation states as follows:

> Promotion work is one type of activity often performed by persons who make sales, which may or may not be exempt work, depending on the circumstances under which it is performed. . . [A]ny promotional work which is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is clearly exempt work. On the other hand, promotional work which is incidental to sales made, or to be made, by someone else cannot be considered as exempt work.

Selling parking tickets or handing out balloons is clearly not incidental to and in conjunction with a salesman's sales activity. Manning an informational booth at a trade show may have generally promoted the product sold by Defendant, but was not incidental to a salesman's own sales based on testimony that no sales associate ever made a sale or even made an appointment at a trade show or Chamber of Commerce type event. The court concludes that this work was nonexempt. However, the testimony concerning these events

indicated that they did not occur on a weekly basis and the court cannot conclude that these events, considered in conjunction with the nonexempt collections work discussed above, exceeded eight hours per workweek.

In light of the foregoing, the court finds that Plaintiffs are exempt from the overtime provisions of the Fair Labor Standards Act.

SIGNED this 29th day of November, 2005, in Houston, Texas.

Nancy K. Johnson
United States Magistrate Judge